**Slip Op. 02-40**

**United States Court of International Trade**

UNITED STATES,

                   Plaintiff,

          v.

SUMMERHILL TECHNOLOGY CORP.
AND ADAM LIN,

                   Defendants.

Before: Pogue, Judge

Court No. 00-12-00562

[Defendant's motion for summary judgment denied.]

Decided: April 29, 2002

Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, A. David Lafer, Senior Trial Counsel, Allison A. Page, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Matthew Hayes, Of Counsel, U.S. Customs Service, for Plaintiff.

Creskoff & Doram LLP (Michael R. Doram) for Defendant Summerhill Technology Corporation.

**OPINION**

**Pogue, Judge:** Plaintiff, United States Customs Service ("Plaintiff" or "Customs"), commenced this action against defendants, Summerhill Technology Corporation ("Defendant" or "Summerhill") and Adam Lin, to recover unpaid customs duties and civil penalties for violation of section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1994). The United States alleges grossly negligent or negligent conduct in connection with the importation of certain

rubberized articles, claiming that between December 1993 and November 1995 Summerhill and Adam Lin filed false value statements with Customs in connection with 53 entries of imported merchandise. See Compl. ¶ 5. Specifically, the United States alleges that the defendants maintained a dual invoicing system in which the invoices submitted for customs entry purposes reported lower prices than those actually paid for imported merchandise, enabling Summerhill to pay less in customs duties. Defendant Summerhill moves for summary judgment, claiming that there exists no evidence to support the allegations of dual invoicing, undervaluation, and underpayment of customs duties. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1582(1),(3) (1994).

## Standard of Review

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, shows no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See USCIT Rule 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is genuine "if the evidence is such that [the trier of fact] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Once a motion for summary judgment is made, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." USCIT Rule

56(e); <u>Celotex Corp.</u>, 477 U.S. at 324.  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Id.</u> at 322.

## Background

Defendant Summerhill imported rubberized articles, specifically rubberized "O" rings and gaskets, for sale in the United States.  In January 1995, a former Summerhill employee, Mark Lin, provided information to the U.S. Customs Service indicating that Summerhill was using a dual invoicing system in order to underpay customs duties on imported merchandise.  <u>See</u> Dep. of Mark Lin (Nov. 9, 2001) ("Lin Dep."), Pl.'s Ex. B at 50-52.

Mr. Lin was employed by Summerhill from April 1994 until his termination in January 1995, and his responsibilities included providing invoices to Summerhill's customs broker for the purpose of filing the customs entry documents.  <u>See</u> <u>id.</u> at 8, 17, 66.  Mr. Lin testified in his deposition that he became aware that Summerhill was using two types of invoices, one marked with a C and one marked with an S.  <u>See</u> <u>id.</u> at 18.  He provided Customs with a copy of an April 1994 facsimile transmission to "Willie," presumably Willie Teng, a Summerhill employee who arranged payment

of invoices.[1]   See id. at 50; Def.'s Ex. 4; Dep. of Willie Teng (Nov. 7, 2001) ("Teng Dep."), Pl.'s Ex. B at 34-35, 45.   One subject of the fax is "Invoice-S."   The fax states, "Invoice-S – For STC sales accounting purposes; Invoice-C – For STC file [sic] customs entry purposes."   Def.'s Ex. 4.   The author of the fax indicates that he or she would send the "Invoices-S" to Willie each month and would "not explain the purpose of these invoice [sic] to Mark," presumably Mark Lin.[2]   Id.   Moreover, the fax notes that "[t]his is a top secret arrangement, do not release this information to anybody else."   Id.

Mr. Lin indicated that on at least two occasions, he saw invoices marked with an S.   See Lin Dep., Pl.'s Ex. B at 20, 74. He stated that he did not have access to the invoices that were marked with an S, and that the invoices submitted to Customs "always have a 'C'."   Id. at 18-20.   Mr. Lin said that he was unaware whether the prices on the invoices marked "S" differed from those on the invoices marked "C".   See Lin Dep., Def.'s Ex. C at

---

[1] Mr. Teng was employed at Summerhill from December 1993 or early 1994 until at least December 31, 1995.  See Teng Dep., Pl.'s Ex. C at 24, 85.  The date of Mr. Teng's separation from Summerhill is not stated in the record presented to the Court; however, a November 1997 Customs Service memorandum refers to Mr. Teng as Summerhill's "former accountant."  See Mem. from Sean Frankel, Import Specialist, Import Specialist Enforcement Team (Nov. 6, 1997), Pl.'s Ex. 8 at 2 ("Frankel Mem.").

[2] The fax refers twice to "Mark." Each time, the name Mark is written above or below the name Mary, which is crossed out. See Def.'s Ex. 4.

22. However, he was aware of price discrepancies between the invoices he sent to Customs and the corresponding purchase orders, and he had been instructed to ignore these discrepancies. See Lin Dep., Pl.'s Ex. B at 52; Def.'s Ex. C at 55, 70-71, 73. The prices on the invoices sent to Customs were lower than the prices indicated on the purchase orders. See Lin Dep., Def.'s Ex. C at 73. Mr. Lin's assertion is supported by the record, which contains an invoice and a purchase order that appear to reflect different prices. See id.; Def.'s Ex. 6, 12. Mr. Lin further stated that the invoices marked "S" went to Willie Teng. See Def.'s Ex. C at 22.

The deposition testimony of Willie Teng is unclear as to whether Summerhill used two types of invoices. Mr. Teng stated first that he was not familiar with invoices marked "S," and subsequently that he had "possibly" seen invoices marked with either the letter S or the letter C; he later stated that he had "never seen" two invoices coming from a particular supplier. Teng Dep., Def.'s Ex. B at 57, 64. Mr. Teng was also unclear concerning whether he processed both types of invoices, although he stated that "eventually [the invoices] should all come to me." Id. at 90. In another deposition, Albert Fu, Summerhill's accounting manager,[3] testified that he did not recall whether there were two types of

---

[3] Mr. Fu was employed at Summerhill from early 1997 until October 1998. See Dep. of Albert Fu (Nov. 8, 2001) ("Fu Dep."), Pl.'s Ex. A at 7.

invoices, marked with either an S or a C, <u>see</u> Fu Dep., Def.'s Ex. D at 59, but stated that he did not see duplicate invoices for import transactions. <u>Id.</u> at 78.

On November 4, 1997, the Customs Service visited Summerhill's premises to conduct an inquiry into allegations that Summerhill was using an undervaluation scheme. <u>See</u> Frankel Mem., Pl.'s Ex. 8. Among the documents reviewed by the agents were invoices showing prices that matched the prices declared on the customs entry filings. However, the agents were unable to ascertain from these documents that the prices recorded on the invoices were the prices actually paid for the merchandise. <u>See</u> <u>id.</u> at 1. Upon asking for proof of payment, the agents were told that the payment information was "tightly controlled" by the accounting department, and that the employee who showed them the invoices and customs records did not know where to find it. <u>Id.</u> The agents subsequently met with Albert Fu. Mr. Fu retrieved accounts payable worksheets which appeared to reflect different prices paid for imported merchandise than the prices recorded on the corresponding invoices and customs filings previously reviewed by the agents. <u>See</u> <u>id.</u> at 2.


**Discussion**

Title 19 U.S.C. § 1401a provides that for the purpose of assessing customs duties, imported merchandise shall be appraised on the basis of transaction value, which is the "price actually

paid or payable for the merchandise when sold for exportation to the United States," plus various adjustments.   19 U.S.C. § 1401a(b)(1) (1994).   Title 19 U.S.C. § 1592 provides for recovery of customs duties and for the imposition of civil penalties where underpayment of customs duties results from fraud, gross negligence, or negligence.

Summerhill moves for summary judgment on the grounds that there is no evidence that the prices it actually paid for the imported merchandise were higher than the prices it reported to Customs.  Summerhill contends that prices reflected on the purchase orders are not relevant, because (1) purchase orders do not reflect the final prices actually paid, and (2) purchase orders are not submitted to Customs and are not documents by which merchandise is entered into the United States.  See Def.'s Mot. S.J. at 4, 7. Summerhill argues that "a 'discrepancy' between a purchase order value and a foreign seller's commercial invoice is not evidence of undervaluation in the absence of evidence that a value higher than the invoice is paid or payable to the foreign supplier." Id. at 4.

However, the issue before the Court is whether the government has presented sufficient evidence to raise a question of fact as to whether customs entry filings were falsified.  The government has presented circumstantial evidence which, viewed in the light most favorable to the government, could be construed to indicate that Summerhill may have been using a dual invoicing system that enabled

it to underreport the prices paid for merchandise and to underpay customs duties. The testimony of Mark Lin indicates that (1) there were two types of invoices, only one of which was filed with Customs, (2) the prices stated on purchase orders did not match the prices on the invoices, and (3) Mr. Lin was not given access to the other invoices and was instructed to ignore the price discrepancies. The apparent price discrepancies between the purchase order and invoice contained in the record support Mr. Lin's testimony. The fax document strongly suggests that there was a dual invoicing system that separated invoices filed with Customs from those used for internal accounting. Finally, the Customs inquiry at Summerhill's offices in 1997 suggests that the prices recorded on the invoices submitted to Customs may not have been the prices actually paid.

As noted earlier, summary judgment is appropriate only where there exists no genuine issue of material fact, such that a party is entitled to judgment as a matter of law. The circumstantial evidence presented here creates a question of material fact as to whether the defendants accurately reported the prices paid for imported merchandise and paid the correct amounts of duties on the imported merchandise. As there exists a question of material fact, summary judgment is inappropriate.

## Conclusion

In accordance with this opinion, Defendant's motion for summary judgment is denied. The parties are directed to file an order governing preparation for trial.

_____
Donald C. Pogue
Judge

Dated:     April 29, 2002
           New York, New York